IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MARK ROGERS,

        Plaintiff,

vs.                              Case No. 12-1085-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

I. **General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On July 16, 2010, administrative law judge (ALJ) William H. Rima issued his decision (R. at 13-22). Plaintiff alleges that he has been disabled since April 19, 2005 (R. at 13). Plaintiff is insured for disability insurance benefits through December

31, 2006 (R. at 15).  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 15).  At step two, the ALJ found that plaintiff has had the following severe impairments since April 19, 2005: history of histiocytosis X and degenerative disease of the cervical spine.  The ALJ further found that plaintiff has had the following severe impairments since October 1, 2008: histiocytosis X, degenerative disease of the cervical spine and right ankle fracture with poor healing and non-union of the tibia (R. at 15).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment prior to October 1, 2008 (R. at 16-17).  After determining plaintiff's RFC prior to October 1, 2008 (R. at 17), the ALJ determined at step four that plaintiff is unable to perform his past relevant work (R. at 19).  At step five, the ALJ determined that plaintiff, prior to October 1, 2008, could perform other jobs that exist in significant numbers in the national economy (R. at 20).  Therefore, the ALJ concluded that plaintiff was not disabled prior to October 1, 2008 (R. at 21).  However, the ALJ further determined that plaintiff was disabled as of October 1, 2008 because plaintiff met a listed impairment as of that date (R. at 20-21).

**III.  Did the ALJ fail to comply with SSR 83-20?**

Plaintiff was found to have the severe impairment of histiocytosis X (R. at 15). Plaintiff argues that the ALJ did not apply the proper analysis in rejecting his claim of disability due to histiocytosis X before December 31, 2006, plaintiff's date in which he was last insured. Specifically, plaintiff contends that the ALJ failed to comply with SSR 83-20.

Social Security Ruling (SSR) 83-20 sets forth the policy and describes the relevant evidence to be considered when establishing the onset date of disability. 1983 WL 31249 at *1. Once published, Social Security Rulings are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1). Factors relevant to the determination of disability onset include the individual's allegations as to when the disability began, the work history, and the medical evidence. SSR 83-20, 1983 WL 31249 at *1; Reid v. Chater, 71 F.3d 372, 373-374 (10th Cir. 1995). These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence. SSR 83-20, 1983 WL 31249 at *1. In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. 1983 WL 31249 at *3.

With slowly progressing impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date can be particularly difficult when adequate medical records are not available. In such cases, it will be necessary to infer the onset date. 1983 WL 31249 at *2. In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment occurred some time prior to the date of the first recorded medical examination. 1983 WL 31249 at *3. Ruling 83-20 thus recognizes that it sometimes may be necessary to infer the onset date. The ALJ then should call on the services of a medical advisor at the hearing. A medical advisor need be called only if the medical evidence of onset is ambiguous. Reid, 71 F.3d at 374. If the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a legitimate medical basis. Blea v. Barnhart, 466 F.3d 903, 911 (10th Cir. 2006); Grebenick v. Chater, 121 F.3d 1193, 1200-1201 (8th Cir. 1997).

The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in substantial gainful activity for a continuous period of at least

7

12 months or result in death. Convincing rationale must be given for the date selected. SSR 83-20, 1983 WL 31249 at *3.

Where medical evidence of onset is ambiguous, an ALJ is obligated to call upon the services of a medical advisor. In the absence of clear evidence documenting the progression of the claimant's condition, the ALJ does not have the discretion to forgo consultation with a medical advisor. Blea, 466 F.3d at 911-912.

In the case before the court, the ALJ submitted the medical evidence to a medical expert, Dr. Winkler, who was asked to review the medical records, and then answer certain questions and provide an RFC assessment on the plaintiff (R. at 234). Dr. Winkler then answered the questions and provided an RFC assessment on February 11, 2010 after reviewing the medical records (R. at 407-413).

In her interrogatories, Dr. Winkler stated the following regarding histiocytosis X:

> History of histiocytosis X (R. at 407)
>
> joint pains unexplained. reason for fatigue unknown has one lesion that may be due to histiocytosis X but this is small & stable (R. at 407)
>
> no evidence of active histiocytosis X…lesion was excised & is now gone (R. at 408, emphasis in original).

8

These findings, as noted by the ALJ (R. at 18), were corroborated in a consultative medical examination conducted by Dr. Henderson on March 19, 2009. Dr. Henderson noted a history of histiocytosis since 1984, and that he underwent a biopsy which showed the positive disease and he was radiated in the back region and head (R. at 373). Dr. Henderson later stated that he was unable to elicit a history of recurrence (R. at 375).

Dr. Winkler stated that there were two relevant time periods, from April 19, 2005 (the alleged onset date) until October 1, 2008 (date of ankle fracture), and from October 1, 2008 to the present (R. at 409). Dr. Winkler then opined plaintiff's physical RFC for those two time periods (R. at 410-413). It is clear from Dr. Winkler's answers to the interrogatories that she considered plaintiff's histiocytosis X, and other impairments listed in her report, beginning on April 19, 2005. There is no merit in plaintiff's contention that Dr. Winkler failed to consider his histiocytosis X prior to December 31, 2006. Furthermore, the court finds that the ALJ, by obtaining the services of a medical expert, complied with the requirements of SSR 83-20.

The ALJ noted plaintiff's testimony and work history. However, the ALJ gave significant weight to the opinions of Dr. Winkler in making his RFC findings for the plaintiff from April

19, 2005 until October 1, 2008 (R. at 19). The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). The court finds no error by the ALJ in the weight he accorded to the opinions of Dr. Winkler.[2]

**4. Did the ALJ err in his credibility analysis?**

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Furthermore, the ALJ need

---

[2] However, the ALJ rejected the opinion of Dr. Winkler and found that plaintiff met listed impairment 1.06 as of October 1, 2008 (R. at 20-21).

not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review

11

the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ noted that plaintiff alleged extreme fatigue and physical limitations, including a need to lie down much of the day. However, the ALJ found that the degree of limitation alleged by plaintiff was not well supported by objective evidence, examination findings, and treatment notes prior to the established onset date of October 1, 2008 (R. at 18). The ALJ then summarized the examination findings and treatment notes in the medical evidence (R. at 18-19). The ALJ gave great weight to the opinions of Dr. Winkler regarding plaintiff's limitations prior to October 1, 2008 (R. at 19). The ALJ noted that no treating or examining physician indicated that plaintiff was disabled or had greater limitations prior to October 1, 2008 (R. at 19). The court will not reweigh the evidence. The court finds that substantial evidence supports the ALJ's credibility findings.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 22nd day of May, 2013, Topeka, Kansas.


                                    s/ Sam A. Crow
                                    Sam A. Crow, U.S. District Senior Judge